| SEX/ETHNIC CATEGORY | SOURCE | MANUAL DATA | | | | | | TAPE DATA | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | YEARS | | | | | | YEARS | | | | | |
| | | 66 | 67 | 68 | 69 | 70 | 71 | 66 | 67 | 68 | 69 | 70 | 71 |
| (4) Combined | Table 1 (line 4) | | | | | | | | | | | | |
| | (line 5) | | | | | | | | | | | | |
| | Table 2 (line 4) | | | | | | | | | | | | |
| | (line 5) | | | | | | | | | | | | |
| | Table 3 (line 4) | | | | | | | – | – | – | – | 0 | – |
| | (line 5) | | | | | | | 0 | 0 | 0 | 0 | 0 | 0 |
| | (line 6) | | | | | | | 0 | + | 0 | 0 | + | + |
| | (line 7) | | | | | | | 0 | 0 | 0 | 0 | 0 | 0 |
| | (line 8) | | | | | | | 0 | 0 | 0 | 0 | 0 | 0 |

**FLINTKOTE COMPANY, GLENS FALLS DIVISION, Plaintiff,**

**v.**

**The UNITED STATES, Defendant;**

**INDEPENDENT CEMENT CO., Party in Interest.**

C.R.D. 79–5;  Court No. 79–2–00304.

United States Customs Court.

Feb. 23, 1979.

Barnes, Richardson & Colburn, New York City, for plaintiff; Andrew P. Vance, Michael A. Johnson, New York City, of counsel.

Barbara Allen Babcock, Asst. Atty. Gen., David M. Cohen, Acting Branch Director, Dept. of Justice, Civil Div., Washington, D. C., for defendant; Velta A. Melnbrencis, Asst. Branch Director, New York City, of counsel.

Pope, Ballard & Loos, Washington, D. C., for party-in-interest, Independent Cement Co.; Thomas A. Rothwell, Jr., Edgar T. Bellinger, Joseph A. Vicario, Washington, D. C., of counsel.

Shearman & Sterling, New York City, for amicus curiae Citadel Cement Corp., Northeast Cement Div.; W. Foster Wollen, Donald L. Cuneo, David J. Mark, New York City, of counsel.

Barry E. Cohen, Arter Hadden & Hemmendinger, Washington, D. C., Arter & Hadden, Cleveland, Ohio, for amicus curiae Lake Ontario Cement Limited and Rochester Portland Cement Corp.; M. Neal Rains, Cleveland, Ohio, William A. Silverman, Washington, D. C., Paul Friedman, Cleveland, Ohio, of counsel.

Williams & King, Washington, D. C., for amicus curiae Genstar Ltd.; William K. Ince, Burton R. Thorman, Washington, D. C., of counsel.

## MEMORANDUM–DECISION and ORDER

RICHARDSON, Judge.

Plaintiff, an American manufacturer of Portland hydraulic cement, commenced this action pursuant to 19 U.S.C.A., section 1516(c) by the filing of a summons on February 14, 1979, affecting Entry No. 209946 dated February 2, 1979, which covers a duty-free importation of Portland hydraulic cement at St. Albans, Vermont, from Canada. The action contests a decision of the Secretary of the Treasury (Secretary) made pursuant to section 1516(c) denying plaintiff's petition urging the imposition of dumping duties on Portland hydraulic cement of Canadian origin following a no-injury determination of the United States International Trade Commission (ITC).

Presently before the court is a motion brought on by order to show cause on February 16, 1979, in which plaintiff urges the court, among other things, to order pursuant to 28 U.S.C.A., section 1651 [commonly known as the All Writs Act] the cancellation of liquidations on which appraisements have been made or the withholding of appraisement and liquidation of other entries of Portland hydraulic cement from Canada pending the final disposition of this action, which, as previously indicated, affects but a single entry. Plaintiff contends that the relief sought on the motion is necessary to bar removal from this court's jurisdiction of cement entries which would otherwise be subject to the court's judgment in the action but for the operation of the liquidation process that was set into motion when the Secretary ordered the resumption of appraisement theretofore withheld during the pendency of the antidumping investigation. Plaintiff asserts that this court is authorized under the All Writs Act to grant the *equitable* relief prayed for in the nature of mandamus and injunction *in aid of* the court's jurisdiction over Entry No. 209946

that comprises the basis for judicial review in this action of the no injury determination of the ITC [which action precluded publication of a "dumping" finding by the Secretary and resulted in the termination of the antidumping investigation]. This posture has generated multiple responses on the instant motion on the part of the defendant and the party in interest as well as from *amicus curiae*, all of whom, like plaintiff, have filed memoranda of law ably articulating their respective contentions.

After careful consideration of all arguments brought to bear on the motion before the court, including a transcript of the rather extensive oral arguments heard by the court on the return of the order to show cause on February 16th, the court is constrained to deny the motion in all respects.

■ The relief sought under the motion is entirely *equitable* in nature. As this court and our appellate court have consistently held, *the customs court is a court of limited statutory jurisdiction which lacks equitable powers.* See, *Matsushita Electric Industrial Company, Ltd., et al. v. The United States Treasury Department et al.*, 67 Cust.Ct. 328, and cases cited on page 329, C.D. 4292, aff'd, 485 F.2d 1402, 60 CCPA 85, C.A.D. 1086 (1973), cert. den., 414 U.S. 821, 94 S.Ct. 117, 38 L.Ed.2d 53 (1973). Indeed, plaintiff has conceded as much in its moving papers when, in Exhibit F of counsel's affidavit dated February 14, 1979, the court's attention was called to plaintiff's complaint before the United States District Court for the northern district of New York (78CV640)[1] in which plaintiff averred over counsel's signature:

> 23. The United States Customs Court is without the equitable power to grant an injunction on the facts presented here.
>
> \*   \*   \*   \*   \*   \*
>
> 28. Because the Customs Court, and its appellate tribunals, have decided that said court does not have the power to grant injunctive relief herein   .   .   .

this Court has jurisdiction to grant such relief *pendente lite* in the Customs Court and its appellate tribunals.

■ Before this court plaintiff asks for "an order in the form of mandamus." which, when the type of relief it is seeking is considered, is a request for a mandatory injunction—an equitable relief—which the Customs Court cannot grant.

This jurisdictional void is not removed through the All Writs Act. Thus, in the most recent case to come before this court on facts not unlike those at bar, also involving a single entry by means of which plaintiff attempted to reach "all present and future entries of plaintiff's merchandise of the type involved in this action" *via* the All Writs Act, the court denied plaintiff's motion for an order compelling action on the part of the Government with respect to such other entries. See, *Dexter v. United States*, 78 Cust.Ct. 179, C.R.D. 77–1; 424 F.Supp. 1069 (1977). In the *Dexter* case Judge Watson said:

> The All Writs Act does not give this court jurisdiction to require anyone to satisfy the preconditions of jurisdiction. It only gives the court instruments with which to effectuate existing jurisdiction.

And in applying the *Matsushita* rationale to *Dexter* Judge Watson went on to say:

> .   .   .   Until the entries are liquidated and protests denied *this court has no jurisdiction over them, not even by way of its jurisdiction over another entry of exactly the same merchandise.* (Emphasis added.)

Precisely the same ruling is required on the instant motion as in *Dexter*, and for the same reasons which prompted the court to decline to compel the Government to liquidate entries of merchandise not before the court.

Even if the court possessed equitable powers to invoke the All Writs Act here in the manner sought by plaintiff, its exercise

---

1. In the district court plaintiff sought essentially the same equitable relief it seeks under the instant motion. By decision (Foley, J.) handed down on February 16th, the date of oral argument of the instant motion, that court declined jurisdiction by reason of the existence of an adequate legal remedy in the customs court under section 1516(c).

would be in conflict with the clear Congressional intent manifest in 19 U.S.C.A., section 1516, and as such, inappropriate. The statutory scheme set forth in section 1516 is neither vague nor ambiguous. Thus, under section 1516(c) Congress provided for judicial review of a negative antidumping determination as to only one entry per port, while providing under section 1516(e) for appraisement, withheld during the pendency of an antidumping investigation, to proceed following a negative determination of antidumping notwithstanding the pendency of judicial proceedings to review such determination, and further providing under section 1516(g) for suspension of liquidation only when this court or its appellate tribunals determined that the Secretary or the ITC had erred.

Therefore, even if plaintiff ultimately succeeds in this action in its challenge to the negative injury determination, dumping duties ensuing therefrom would only have prospective application, i. e., only to Portland hydraulic cement from Canada "which is *entered* for consumption or withdrawn from warehouse for consumption *after the date of publication of the court decision.*" (Emphasis added.) Consequently, the suspension of appraisement and liquidation of any such merchandise entered or withdrawn for consumption before such "date of publication" perforce of injunctive and mandamus relief obtained in a judicial proceeding could not properly result (by means of retroactive application) in subjecting the judicially suspended entries to the court's judgment without doing violence to the Congressional plan.

This is not to say that the plaintiff or any other American manufacturer does not have just cause to be aggrieved by the fact that neither the Customs Court nor the District Court has jurisdiction to grant equitable relief in a situation such as this case presents. Prior to enactment of the Cus-

toms Courts Act of 1970, P.L. 91–271, every American manufacturer enjoyed the *very substantive right* to reach every entry of imported merchandise of a class or kind produced by it, if it were so inclined, under an American manufacturer's appeal for reappraisement [2] instituted in this court pursuant to former section 1516(a). See, 19 U.S.C., section 1516(a), 1964 edition, and compare, *Airco Speer Division, Air Reduction Company, Inc. v. United States (Matsushita Electric Corp. of America, Party-in-Interest)*, 64 Cust.Ct. 737, R.D. 11710 (1970), embracing 8 entries. However, with the advent of the 1970 Act this substantive right was eliminated with the deletion of section 1516(a) as then constituted, and this, notwithstanding the fact that the House Judiciary Committee report stated that the revision was intended "to reflect the consolidation of appraisal and classification procedures within the Bureau of Customs, *but is not designed to have substantive effect on the rights of the parties under existing law.*" (Emphasis added.) See, 1970 U.S. Code & Adm.News, Vol. 2, pp. 3188, 3217 [H.Rep. No. 91–267, 91st Cong., 2d Sess.].

The present action is, of course, a testimonial to the fact that the government's representation, as plaintiff's counsel states, was in error. Needless to say, that if the language of 1516(a) with respect to all entries had not been deleted, plaintiff would not be in court seeking the list of entries which have not been made available to him, though requested.

For the reasons expressed above it is

ORDERED, that plaintiff's motion for an order in the form of mandamus and injunction, and for certain ancillary relief, pursuant to the All Writs Act, 28 U.S.C.A. 1651(a), be, and hereby is, denied.

---

2. Appeal to reappraisement was the most frequently used method of obtaining judicial review of adverse antidumping determinations. See, *Amtorg Trading Corporation v. United States*, 21 CCPA 532, T.D. 46975 (1934); *United States v. European Trading Co.*, 27 CCPA 289, C.A.D. 103 (1940); *Ellis K. Orlowitz v. United States*, 47 Cust.Ct. 583, A.R.D. 136 (1961), aff'd, 50 CCPA 36, C.A.D. 816 (1963); *Maher-App & Co. v. United States*, 64 Cust.Ct. 598, R.D. 11690 (1970).